```
 1 | BENJAMIN B. WAGNER
   | United States Attorney
 2 | MICHELLE RODRIGUEZ
   | Assistant United States Attorney
 3 | 501 I Street, Suite 10-100
   | Sacramento, CA 95814
 4 | Telephone: (916) 554-2700
   | Facsimile: (916) 554-2900
 5 |
 6 |
 7 |
```



**FILED**

MAY 22 2013

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
         DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | CASE NO. 13-046-KJM |
|---|---|
| Plaintiff, | |
| v. | **PLEA AGREEMENT** |
| JOHN GERALD POLAND, | |
| Defendant. | |

1. This plea agreement is between the United States, by AUSA Michelle Rodriguez, and the defendant, Poland, through and with the advice and consent of his counsel, Mark Reichel. This plea agreement, reached after negotiations under Fed. Rules of Criminal Procedure (FRCP) 11 and 32, is limited to the United States Attorney's Office for the Eastern District of California (EDCA) and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities.

2. The Court is not a party to this plea agreement. Sentencing is a matter solely within the discretion of the Court and the Court may take into consideration any and all facts and

Plea agreement (John G. Poland)                                                1

circumstances concerning the criminal activities of the defendant, including activities that may not have been charged in the Information. The Court is under no obligation to accept recommendations, if any, made by the United States, and the Court may in its discretion impose any sentence it deems appropriate up to and including the statutory maximum stated in this plea agreement. If the Court should impose any sentence up to the maximum established by the statute, the defendant cannot, for that reason alone, withdraw his guilty plea, and he will remain bound to fulfill all of the obligations under this plea agreement. The defendant understands that the prosecutor, defense counsel, and the Court cannot make a binding prediction or promise regarding the sentence he will receive. This plea agreement is not submitted to the Court pursuant to FRCP 11(c)(1)(C).

  3. By Indictment, the defendant is charged with the following felony offenses:

| Count | 18 USC Offense | Description |
|---|---|---|
| 1 | 1512(b)(1) & (b)(2)(B) | Tampering with a Witness, Victim, or Informant |
| 2 | 1512(b)(1) & (b)(2)(B) | Tampering with a Witness, Victim, or Informant |
| 3 | 1512(b)(1) & (b)(2)(B) | Tampering with a Witness, Victim, or Informant |
| 4 | 1512(c)(1) & (2) | Obstruction of Official Proceeding |

This document contains the complete plea agreement between the EDCA United States Attorney's Office and the defendant regarding this case and the identified charged offenses.

  4. The defendant **shall plead guilty** as charged in **Count 4** of the **Indictment** (a violation of **18 USC 1512(c)(1) & (2)** (felony Obstruction of Official Proceedings)). The defendant agrees that he

is in fact guilty of these charges and that the facts set forth in the Factual Basis for Plea, attached hereto as Exhibit A and fully incorporated into this document, are entirely true and accurate.

5. The defendant agrees that this plea agreement will be filed with the Court and will become a part of the record of the case. The defendant understands and agrees that he will not be allowed to withdraw his plea should the Court not follow sentencing recommendations, if any, of the United States.

6. The defendant agrees that the statements made by him in signing this plea agreement, including the factual admissions set forth in the factual basis, shall be admissible and useable against the defendant by the United States in any subsequent criminal or civil proceedings, even if the defendant fails to enter a guilty plea pursuant to this plea agreement. The defendant waives any rights under FRCP 11(f) and Fed. R. Evid. 410, to the extent that these rules are inconsistent with this paragraph or with this plea agreement generally.

7. The Mandatory Victim Restitution Act requires the Court to order restitution to the victims of certain offenses. The defendant agrees the conduct to which he is pleading guilty requires mandatory restitution pursuant to 18 U.S.C. § 3663A, and he agrees to pay full restitution to the United States and or all victims of his offense conduct. The defendant agrees that he will not attempt to discharge and or discharge any restitution obligation or any part of such obligation in any bankruptcy proceeding.

8. The defendant agrees to pay any criminal fine ordered by the Court. The defendant agrees to pay a special assessment of $100 for his felony offense of conviction at the time of sentencing by

delivering a check or money order payable to the United States District Court to the United States Probation Office immediately before the sentencing hearing. The defendant understands that this plea agreement is voidable at the option of the United States if he fails to pay the assessment prior to that hearing. If the defendant is unable to pay the special assessment at the time of sentencing, he agrees to earn the money to pay the assessment, if necessary by participating in the Inmate Financial Responsibility Program.

9. If the defendant violates this plea agreement in any way, withdraws his plea, or tries to withdraw his plea, then this plea agreement is voidable at the option of the United States. The United States will no longer be bound by its representations to the defendant, if any, concerning the limits on criminal prosecution and sentencing. The defendant shall have violated this plea agreement, for example, by committing any post-plea crime or criminal conduct or by providing any post-plea statement or testimony which proves to be knowingly false, misleading, or materially incomplete. Any post-plea conduct by the defendant constituting obstruction of justice shall also be a violation of this plea agreement. The determination whether the defendant has violated this plea agreement will be under a probable cause standard.

10. If the defendant violates this plea agreement, withdraws his plea, or tries to withdraw his plea, the United States shall have the right (1) to prosecute the defendant on any of the counts to which he pleaded guilty; (2) to reinstate any counts that may be dismissed pursuant to this plea agreement; and (3) to file any new charges that would otherwise be barred by this plea agreement. The defendant shall thereafter be subject to prosecution for any federal

criminal violation of which the United States has knowledge, including perjury, false statements, and obstruction of justice. The decision to pursue any or all of these options is solely in the discretion of the United States Attorney's Office. By signing this plea agreement, the defendant agrees to waive any objections, motions, and defenses that the defendant might have to the United States' decision. Any prosecutions that are not time-barred by the applicable statute of limitations as of the date of this plea agreement may be commenced, notwithstanding the expiration of the statute of limitations between the signing of this plea agreement and the commencement of any such prosecutions. The defendant agrees not to raise any objections based on the passage of time with respect to such counts and or charges including, but not limited to, any statutes of limitation or any objections based on the Speedy Trial Act or the Speedy Trial Clause of the Sixth Amendment to any counts/charges that were not time-barred as of the date of this plea agreement. In addition, (1) all statements made by the defendant to the United States or other designated law enforcement agents, or any testimony given by the defendant before a grand jury or other tribunal, whether before or after this plea agreement, shall be admissible in evidence in any criminal, civil, or administrative proceedings hereafter brought against the defendant; and (2) the defendant shall assert no claim under the United States Constitution, any statute, FRCP 11(f), Fed R. Evid. 410, or any other federal rule, that statements made by the defendant before or after this plea agreement, or any leads derived therefrom, should be suppressed. By signing this plea agreement, the defendant waives any and all rights in the foregoing respects.

11. The defendant agrees to forfeit to the United States voluntarily and immediately all right title and interest, if any, to any and all evidence, including all seized materials obtained pursuant to court (grand jury) order. Also, the defendant agrees to forfeit to the United States voluntarily and immediately all right title and interest in assets subject to forfeiture pursuant to 18 U.S.C. §§ 982, 1028(b)(5), 2253, and or 21 U.S.C. 853. The defendant acknowledges and agrees that the assets may also be forfeited, under applicable law, as constituting property traceable and or substitutable pursuant to federal violations providing for such forfeiture. The defendant agrees to fully assist the United States in the forfeiture of all such assets and to take whatever steps are necessary to pass clear title to the United States. The defendant shall not sell, transfer, convey, or otherwise dispose of any assets subject to forfeiture.

12. The defendant voluntarily stipulates and agrees that as part of his sentence the Court may, pursuant to FRCP 32.2(b), order a forfeiture money judgment. The defendant agrees not to file a claim to any of listed property in any civil proceeding, administrative or judicial, which may be initiated. The defendant agrees to waive his right to notice of any forfeiture proceeding involving such property, and agrees to not file a claim or assist others in filing a claim in any such forfeiture proceeding.

13. The defendant knowingly and voluntarily waives his right to a jury trial on the forfeiture of assets. The defendant knowingly and voluntarily waives all constitutional, legal, and equitable defenses to the forfeiture of the assets in any proceeding. The defendant agrees to waive any jeopardy defense, and agrees to waive

any claim or defense under the Eighth Amendment to the United States Constitution, including any claim of excessive fine, to the forfeiture of the assets by the United States, the State of California or its subdivisions. The defendant waives oral pronouncement of forfeiture at the time of sentencing, and any defenses or defects that may pertain to the forfeiture.

14. If requested by the United States' counsel, the defendant agrees to make a full and complete formal disclosure of his assets and financial condition, and will complete the United States Attorney's Office's "Authorization to Release Information" and "Financial Affidavit" at least 5 weeks prior to sentencing. The defendant also agrees to have the Court enter an order to that effect. The defendant understands that this plea agreement is voidable at the option of the United States if the defendant fails to complete the Financial Affidavit truthfully and provide the described documentation to the United States Attorney's office within the allotted time.

15. Poland understands that, to be eligible for reduction in offense level for acceptance of responsibility under USSG § 3E1.1, Poland must provide truthful information to the U.S. Probation Office for purposes of preparing a presentence report, express remorse for his crimes, admit to the factual elements necessary to support his guilty plea and crimes of conviction (as charged in Count 4 of the Indictment) and commit no crimes before judgment and sentencing. The United States will recommend a two-level reduction (if the offense level is less than 16) or a three-level reduction (if the offense level reaches 16) in the computation of his offense level if Poland clearly demonstrates acceptance of responsibility for his conduct as

defined in U.S.S.G. § 3E1.1. The parties do not stipulate as to criminal history. Having considered the cross reference in USSG 2J1.2 and incorporating USSG 2X3.1 and USSG 2G1.3(a)(4), the parties stipulate that the offense level is no higher than 18. The parties reserve all rights as to all other USSG provisions, specifically including reserving rights under USSG 2G1.3(b)-(c) and rights under all other USSG Chapters. The United States agrees to recommend the low end of the final USSG range found by the Court at sentencing.

16. The defendant understands and agrees that the United States is free to provide full and accurate information to the Court and Probation, including answering any inquiries made by the Court and or Probation and rebutting any inaccurate statements or arguments by the defendant, his attorney, Probation, or the Court. The defendant also understands and agrees that nothing in this Plea agreement bars the United States from defending on appeal or collateral review any sentence that the Court may impose.

17. By his signature hereto, the defendant admits he has read the charges against him and the charges have been fully explained to him by his attorney. By his signature hereto, the defendant affirms that he fully understands the nature and elements of all the crimes charged in the Indictment, and specifically the crime to which he is pleading guilty, together with defenses, if any.

18. As to the offense charged in Count 4 (Obstruction of an Official Proceeding), the defendant agrees that, if this matter proceeded to trial, then the United States would be required to prove beyond a reasonable doubt, and during the occasion charged, the following:

///

1) The defendant knowingly did, or attempted to, intimidate, threaten, mislead, and corruptly persuade another person.

2) The defendant did so with the intent to cause and induce said person to evade court orders in an official proceeding (including grand jury orders (subpoenas for testimony and documents), search warrants, and legal processes summoning that person to appear as a witness or to produce a record, document, or object. And,

3) The defendant did so with the intent to alter, destroy, mutilate, or conceal a record, document, or other object with the intent to impair the object's integrity or availability for use in the official proceeding.

19. The defendant understands: (a) the maximum penalty for his violations as follows:

| Offense | Maximum Penalty Description |
|---|---|
| 18 U.S.C. § 1512(c)(1)&(2) | not more than 20 yrs jail; $250,000 fine; 3 yr TSR; restitution to victims |

(b) if the term of supervised release (TSR) for his conviction is revoked, a 2 year additional period of consecutive incarceration may be imposed; and (c) a mandatory $100 penalty assessment for his felony conviction will be imposed in addition to any penalty imposed by the Court. The defendant understands and agrees that any combination or all penalties/components of his sentence may be run additionally and consecutively by the Court, including, for example, that the life term of supervised release shall follow the imposed period of incarceration and that the Court will be requested to make an order of restitution to identifiable victims.

20. The defendant understands that the Court must consult the Sentencing Guidelines and must take them into account when determining a final sentence. The defendant understands that the Court will determine a non-binding and advisory guideline sentencing range for this case pursuant to the Sentencing Guidelines. The defendant further understands that the Court will consider whether there is a basis for departure from the guideline sentencing range

(either above or below the guideline sentencing range) because there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the Guidelines. The defendant further understands that the Court, after consultation and consideration of the Sentencing Guidelines, must impose a sentence that is reasonable in light of the factors set forth in 18 U.S.C. § 3553(a).

21. The defendant agrees that the application of the Sentencing Guidelines and 18 U.S.C. § 3553 to his case results in a reasonable sentence. The defendant reserves rights to present facts supporting departure downward under section 3553.

22. The defendant understands that by pleading guilty he is waiving the following constitutional rights: (a) to plead not guilty and to persist in that plea if already made; (b) to be tried by a jury; (c) to be assisted at trial by an attorney, who would be appointed if necessary; (d) to subpoena witnesses to testify on her behalf; (e) to confront and cross-examine witnesses against her; and (f) not to be compelled to incriminate herself.

23. The defendant understands that the law gives the defendant a right to appeal his guilty plea, conviction, and sentence. The defendant agrees as part of his plea, however, fully to give up the right to appeal his guilty plea, sufficiency of evidence, conviction, USSG calculations and applications, and the sentence imposed in this case. The defendant specifically also gives up the right to appeal any order of forfeiture or restitution the Court may impose. Notwithstanding the defendant's waiver of appeal, the defendant will retain the right to appeal if one of the following circumstances occurs: (1) the sentence imposed by the District Court exceeds the

statutory maximum; and or (2) the United States appeals the sentence in the case.  In addition, regardless of the sentence the defendant receives, the defendant also fully gives up any right to bring a collateral attack, including a motion under 28 U.S.C. § 2255 or § 2241, challenging any aspect of the guilty plea, conviction, or sentence.

24.  The defendant agrees to waive all rights under the "Hyde Amendment," Section 617, P.L. 105-119 (Nov. 26, 1997), to recover attorneys' fees or other litigation expenses in connection with the investigation and prosecution of all charges in the above-captioned matter and of any related allegations.

25.  The defendant recognizes that pleading guilty may have consequences with respect to his immigration status if he is not a citizen of the United States.  Under federal law, a broad range of crimes are removable offenses, including the offense to which the defendant is pleading guilty.  Indeed, for the defendant's crimes of conviction, removal is presumptively mandatory if defendant is not a citizen of the United States.  Removal and other immigration consequences are the subject of a separate proceeding, however, and defendant understands that no one, including his attorney or the district court, can predict to a certainty the effect of his conviction on his immigration status.  The defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his plea may entail, even if the consequence is his automatic removal from the United States.

26.  Other than this plea agreement, no agreement, understanding, promise, or condition between the United States and the defendant exists, nor will such agreement, understanding,

promise, or condition exist unless it is committed to writing and signed by the defendant, counsel for the defendant, and counsel for the United States.

27. The defendant declares and agrees that his attorney has advised him that he may be remanded into custody after entry of his guilty plea and pending the sentencing hearing.

28. The defendant further agrees that he has been advised by his attorney of all his rights under the Federal Rules of Criminal Procedure, including FRCP 11 and 32, and all his rights under the U.S. Constitution. The defendant agrees that he fully understands those rights and that he is satisfied with his attorney's representation.

29. I, John G. Poland, have consulted with my attorney at great length, and I fully understand all my rights, including those rights contained in FRCP 11 and my constitutional rights, with respect to the offenses charged in the Indictment against me. I have read this plea agreement, including its incorporated Exhibit A, and I have carefully reviewed every part of it with my attorney. In signing this plea agreement, I was not under the influence of any disabling or mentally impairing drug, medication, liquor, intoxicant or depressant. Further, I was alert, attentive and fully capable of understanding the terms and conditions of this plea agreement. I understand the Indictment's charges, the potential charges against me, and specifically the charge (Count 4 in the Indictment) to which I am pleading guilty. I agree to pay full restitution for all of my criminal conduct. I am fully satisfied with my attorney's representation. I understand this plea agreement, and I voluntarily agree to this written plea agreement. I understand that no other

terms or oral agreements exist, other than what appears in this plea agreement.

Dated: 5-22-13

JOHN G. POLAND
Defendant

30. I, Mark Reichel, am defendant Poland's attorney. I have fully explained to Poland the terms of this plea agreement and his rights with respect to the charges against him and all potential charges against him. Poland wishes to plead guilty to the charge set forth in Count 4 of the Indictment. To my knowledge, Poland's decision to enter into this plea agreement is an informed and voluntary decision. Poland understands and agrees that he is guilty as charged in Count 4 of the Indictment. In signing this plea agreement, Poland did not appear to be under the influence of any disabling or mentally impairing drug, medication, liquor, intoxicant or depressant. Further, from what I could discern based on my extensive discussion and "question and answer" experiences with Poland regarding the Indictment, the statutory charges, and the plea agreement, I have reason to believe that, considering the mental state under which he signed this plea agreement, Poland was alert, attentive and fully capable of understanding the terms and conditions of this plea agreement.

Dated: 5-22-13

MARK REICHEL
Attorney for Defendant

31. The undersigned Assistant United States Attorney hereby accepts and agrees to this plea agreement for the United States.

Dated: 5/22/2013

BENJAMIN B. WAGNER
United States Attorney

/s/ Michelle Rodriguez
MICHELLE RODRIGUEZ
Assistant United States Attorney

Plea agreement (John G. Poland)　　14

**EXHIBIT A**

32. The defendant, with the advice and assistance of his defense counsel, acknowledges and agrees that the following factual summary accurately describes the events underlying his criminal conduct and offenses of conviction.

1) Poland, at all times material to the charges in the Indictment and at all times material to Poland's conduct underlying the identified investigations, was a South Lake Tahoe Police Dept (SLTPD) Police Officer. From at least early 2006 through mid 2011, Poland had a relationship with witness VC who (while romantically involved with Poland in 2007-10) was the girlfriend of a SLT gang member (TGU). In June 2011, VC was then Poland's former mistress and TGU was under EDCA/FBI investigation under 18 USC 922(g)(1) and 21 USC 841,846. A federal search warrant was issued for the residence of TGU (shared with VC). On June 29, 2011, Poland was at the search warrant execution briefing (because SLTPD officers were assisting in warrant). After another SLTPD officer revealed Poland's former relationship with VC, Poland was reassigned from the execution team (perimeter). By consent of SLTPD, Poland's patrol car then had a recording device. On the afternoon of execution of the federal warrant, Poland was recorded as he revealed (prior to and during execution) search warrant details to several SLT residents including associates of VC. As execution was ending on June 29, 2011, Poland contacted (also recorded) VC (who had been at work) and told her the FBI was coming to talk to her. Poland instructed VC what to say and to destroy evidence (contents of her cell phone). On June 29, 2011, Poland coached VC on how to cover up their affair and what to say about her and his knowledge of TGU's illegal activities. In anticipation of FBI interviewing VC, in recorded conversation Poland said "If there's anything fucking bad on your phone, go ahead and delete it. They could very well take it." As a result of Poland's direction, VC provided materially false and incomplete information regarding TGU and his activities to the FBI on June 29, 2011 and she deleted information from her cell phone relating to TGU and Poland.

2) The TGU federal investigation grew to include Poland's tampering with a witness and it also grew as involving obtaining documents and testimony through federal grand jury. VC was identified as a grand jury witness with physical and testimonial evidence. During the grand jury investigation and while VC was under subpoena to produce documents and testimony, law enforcement was told by VC that Poland had previously confided to VC that he had had sexual relations with minors. VC agreed to provide information to law enforcement and the grand jury. From late June through October 2011, VC acknowledged that Poland successfully instructed her to destroy her phone history and contacts information on June 29, 2011 prior to the her interview in connection with the federal officers executing the federal search warrant re TGU. VC revealed additional information re Poland's recent conduct toward her and she agreed to make consensual phone recordings. On October 18,

2011, a grand jury subpoena was served on VC. Between October 18 and November 21, 2011, in recorded conversations before VC's grand jury testimony, Poland told VC to conceal or destroy evidence compelled by the grand jury subpoena. Poland said "You can't take what you don't have" and "don't be fucking giving them my badge and my dog tags." He is also heard saying to VC "better give that shit to me before you go giving those to them." Poland pressured VC saying "I gotta worry about my life in your hands. A lot hinges on what you say" and "I'm not sure I'll beat this one."

3) From June 29, 2011 through December 20, 2011, the investigation further grew to include not only Poland tampering with a witness (VC) in the TGU federal drug and gun investigation but also grew to include credible allegations that Poland engaged in unlawful prohibited sexual contact and conduct with minors under color of law (while serving as the SLTPD school resource officer). VC claimed to law enforcement that Poland confessed to her that he had sexual relations with high school students while he was assigned the SLTPD school resource officer duty from 2003 to 2006. During the grand jury investigation and while witnesses were under subpoena to produce documents and testimony, law enforcement identified former South Tahoe High School (female) students that Poland had engaged in sexual relations (contact and or conduct). Poland, who had learned of the grand jury investigation's expansion to include his prior sexual relations with minor South Lake Tahoe students, then contacted the witnesses (his former student girlfriends / mistresses).

4) Two former South Tahoe High School students provided law enforcement statements in which each admitted engaging in voluntary sex acts with Poland while they were 17 and while he was the school resource officer. During the grand jury investigation, Poland attempted to have 1 of the 2 girls (victim AW) withhold evidence called for by her grand jury subpoena. Poland also directed and instructed AW to provide false testimony to the grand jury.

5) Specifically, on December 15, 2011, FBI interviewed AW in connection with her appearance before a federal grand jury. AW stated that she engaged in sexual activity with Poland in October 2003 while she was a 17 year old senior in high school. Poland was at the time a 35 year old School Resource Officer. AW stated that on at least one occasion while she was 17 years old, Poland digitally penetrated her vagina. Their meetings took place in secluded spots Poland suggested. Their meetings occurred both while he was on duty and off, including occasions when he took her home from babysitting his children. AW stated she did not have sexual intercourse with Poland until after her 18th birthday and her graduation from high school. While a minor and 18 year old student in high school, Poland gave her several gifts, including music CDs and Dallas Cowboys shorts and halter top, which he had shipped to the high school so that his wife would not know about them. Poland acknowledged his sexual relationship with AW by signing AW's high school yearbook with a hand written entry including "I will always hope the best for you and will always be here for anything you might need IE ... A shoulder to cry on, a Hug, Kiss... (Take Forgranted [sic] Terre [Poland's wife] isn't around). I do appreciate your individual time that you give me and look forward

Plea agreement (John G. Poland)     16

to the days (and nights) ahead!"... "You are a special person to me [Victim 1's first name]! I love you (Shhh!) [heart symbol] JP P.S. I don't think you suck in bed!"

6) On December 20, 2011, AW spoke with Poland in a consensually recorded telephone conversation. During the conversation, AW informed Poland that she had appeared before the grand jury and that law enforcement seemed to know everything about their relationship, including their meetings at a particular motel in South Lake Tahoe. Since VC's grand jury testimony had been continued and more was to be provided, Poland corruptly influenced her by characterizing his illicit sexual contact with her as merely an affair: "Oh well, so you and I had an affair, fucking lock me up." Poland attempted to persuade AW to tell law enforcement that the police were out to get him. Poland attempted to influence her testimony by claiming another witness (VC) was a "crazy bitch." When AW told Poland that her subpoena compelled her to produce emails and whatever gifts Poland had given her, Poland attempted to persuade her to destroy evidence by repeatedly telling her "You can't take what you don't have."

7) In addition to directing witnesses to destroy evidence, conceal items, and withhold testimony, Poland himself also altered and concealed records. In a recorded conversation, Poland himself declared to a witness (VC) that he had deleted evidence of his communications from his own cell phone records. Poland, in a recorded call, admitted to V.C. that he deleted all records, notes, and items indicating his involvement with VC. In the recording, Poland claimed that he "got rid of all of them" and he added he only saved 3 emails from VC.

33. I, John G. Poland, have read Exhibit A, the above Factual Basis for Plea, and agree that it is true and accurate.

Dated: 5/22/2013

JOHN G. POLAND, Defendant

34. I, Michael Petrik, have read Exhibit A, the above Factual Basis for Plea, and agree that it is true and accurate.

Dated: 5/22/2013

MARK REICHEL
Counsel for Defendant Poland