# APPENDIX

OFFICIAL RECORD

# FEDERAL BUREAU OF INVESTIGATION

Date of entry    11/05/2012

Theresa ███████, also known as Terre P██████ date of birth (DOB) ███████, was interviewed at her residence ███████████ After being advised of the identity of the interviewing Agents and the nature of the interviews, changing clothes and relocating her son for privacy, she provided the following information.

She has been estranged from her husband Johnny P████ since April, 2012, when she learned that he was having an affair with a younger female employee of the gym she works and he belong to. She initiated the separation, asking him to leave. He moved some of his belongings out, although some property remains in the garage. She denied knowing where he is living or of any storage unit that he might be using. He does still have access to the house and comes over regularly to see their children when she is at work. She plans to file for divorce, but has not done so yet.

She has not been told the reason for his latest suspension from work as a police officer. She was told some of the allegations about improper relationships with gang associates and high school girls. She did not express surprise about these allegations. She replied that after their most recent separation, people have told her things about Johnny that disturbed her. She summed them up by saying "he is definitely not the person I thought he was when I was married to him." She did not provide further details.

When asked about computer access at her residence, she noted that Johnny does not have a laptop, but sometimes used hers. They have a desktop computer that is approximately 10 years old that has WiFi capability that he has used in the past in the house. He predominantly uses his smart phone for communication. She was asked for consent to search her residence, including her computer. She subsequently asked whether the interviewers could get a warrant. It was explained that the statement of facts in a search warrant application are public record and would potentially be embarrassing to her and her children so the agents opted to seek consent first. She did not immediately grant consent.

Johnny Poland arrived at the residence and came to the back porch where the interview was taking place. Terre stood up from her chair closest

Investigation on   06/15/2012   at   South Lake Tahoe, California, United States (In Person)

File #   194C-SC-45276                                        Date drafted   11/05/2012

by   CAMPION CHRISTOPHER, REGAN SEAN P

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.






to the door and stood behind SA Campion's chair. Johnny told Terre that she did not have to talk to the interviewers and expressed his desire that the interviewers leave. When advised that it appeared he no longer resided at the residence and that the interviewers would remain until Terre asked them to leave, he returned inside the house. He came out a short time later on the phone, which he handed to Terre saying it was "their" attorney "Steve." Discussion ensued about who represented whom, but Terre took the phone and went inside the house.

After several minutes and a conversation with Johnny Poland, the interviewers learned that Terre was upset, physically ill throwing up in the bathroom, and not able to continue the interview presently. Based on prior domestic violence in the family, a police car was requested to respond to the area. Johnny Poland departed shortly thereafter. Daughter ███████████ checked on Terre several times and conversed with the interviewers. After leaving contact information with ███████ the agents departed without further contact with Terre.



FD-302 (Rev. 5-8-10)

**OFFICIAL RECORD**

## FEDERAL BUREAU OF INVESTIGATION

Date of entry    11/02/2012

     John G. Poland, Jr., date of birth (DOB) ██████/1968, known to agents from prior professional contacts, was contacted at ████████ ██████,when he arrived and interrupted an interview of his estranged wife Terre P██████ which was occurring on the rear porch. Poland told Terre that she did not have to talk to the interviewers. He then expressed his desire that agents leave the premises. SA Campion advised that since Poland no longer resided there, it was up to Terre ██████to decide whether to continue the interview. Poland returned a short time later handing a phone to Terre saying that "their" attorney "Steve" was on the phone and that Terre should talk to him before continuing with the interview.

     While Terre went inside the house to speak on the phone, agents explained to Poland that investigation had progressed to the point of nearing completion. The interviewers expressed desire to talk with Poland to learn his version of events and address the allegations being made. Poland replied that he is willing to speak to investigators, but only with his attorney present. Agents provided Poland with a letter dated 06/15/2012 from Assistant United States Attorney Michelle Rodriguez formally advising Poland of the investigation and offering to meet with him and his attorney. Poland returned inside the house and appeared to be reading the letter.

     After several minutes, agents returned inside as well to check on Terre. Poland went to the bathroom door several times and conversed with Terre, who was inside the bathroom. Poland appeared agitated that agents had come to interview his wife. He stated that it was clear that no one should submit to interview without an attorney present because law enforcement would twist their words to implicate them. SA Campion disputed this, observing that those with nothing to hide regularly speak to law enforcement without an attorney and questioning whether Poland engaged in misrepresenting testimony of those he interviewed.

     Sensing Poland's increasing agitation and being aware of prior domestic violence reports in the family, SA Regan called South Lake Tahoe Police dispatch on the non-emergency number and requested a unit to respond to the residence. Hearing this, Poland departed the residence in his Jeep.

     Later, agents encountered Poland again while interviewing Cynthia

---

Investigation on    06/15/2012    at    South Lake Tahoe, California, United States (In Person)

File #    194C-SC-45276            Date drafted    11/02/2012

by    CAMPION CHRISTOPHER, REGAN SEAN P

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.





FD-302a (Rev. 05-08-10)

194C-SC-45276

Continuation of FD-302 of Attempted interview of John Poland .On 06/15/2012 . Page 2 of 2

at the door to her apartment. Poland walked by agents, greeting
them and stating "I do live here."



01099

FD-302 (Rev. 5-8-10)

**FEDERAL BUREAU OF INVESTIGATION**



Date of entry ___11/05/2012___

████████████████████ date of birth (DOB) ████████████ as interviewed at her residence ██████████████. She learned of the identities of the interviewers while agents were introducing themselves to her mother Terre ████████ prior to her interview. After Terre's interview was interrupted and Terre became ill and was in the bathroom, ████████ conversed with agents between checks on her mother. She provided the following information.

When asked if she alerted her father that the FBI was at their house, she initially replied that her father often came to the house to play with her brother ████ in the mornings. She subsequently admitted that she had texted her father shortly after agents had arrived at the house, saying that her mother told her to do so while she (Terre) was changing clothes.

Agents shared the concern that allegations have been made that her father had sexual relationships with high school girls while he was the School Resource Officer. Noting that she was now the same age, she was asked about herself or her friends who spent time with her family. She denied that she or any of her friends had a sexual relationship with her father. When asked who her close girlfriends were, she said that she has mostly male friends. When asked who had babysat her and/or ████ when her parents were out, she replied that she was ████████ only babysitter.

After ████████ advised that her mother had been throwing up and was now lying down, it became apparent that Terre was unable to continue with the interview. Contact information was provided to ████████ to give to her mother and the agents departed.

---

Investigation on ___06/15/2012___ at  South Lake Tahoe, California, United States (In Person)

File # ___194C-SC-45276___                                              Date drafted ___11/05/2012___

by  CAMPION CHRISTOPHER, REGAN SEAN P

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.



01102




FD-302 (Rev. 5-8-10)

**OFFICIAL RECORD**

## FEDERAL BUREAU OF INVESTIGATION

Date of entry _____11/05/2012_____

Cynthia ██████████ date of birth ██████████████████, ██████████ outh Lake Tahoe, CA, was already aware of the identities of the interviewers from prior professional contact. She was interviewed at the door of her apartment since she opted not to allow agents to enter the apartment. She provided the following information.

She has known Johnny Poland since she was a freshman at South Tahoe High School and he was the police officer assigned there. She declined to comment on the nature of their current relationship, but did not deny that it appeared to the interviewers that she and Poland were romantically involved and that he was staying with her most nights.

She had positive contacts with Poland during her high school years and observed that Poland helped her and other students by getting them to go to school. She denied that she and he had a sexual relationship while she was a student. She had heard rumors that he was sexually involved with another student, but had never seen them together and had no personal knowledge of the relationship. She declined to name that student.

She knows ██████████ an adult female who was romantically involved with Poland in recent years. She also knows ██████████ boyfriend ██████ and numerous other members of the local Hispanic Sureno gang who are alleged to sell drugs. She declined to comment on Poland's relationship with these individuals.

When asked about an incident where ██████████ and ██████████ houses were searched, she confirmed that she knew that they were searched. She did not recall Officer Johnny Poland telling her about the searches. She stated that she did not, and would not, tell ██████████ or ██████ or their associates, about a pending search if she did learn of it.

Poland arrived at the apartment on his motorcycle during the interview. After acknowledging the agents, he entered the apartment observing that this was his current residence. ██████████ terminated the interview shortly thereafter.

Investigation on  06/15/2012  at  South Lake Tahoe, California, United States (In Person)

File #  194C-SC-45276                                    Date drafted  11/05/2012

by  CAMPION CHRISTOPHER, REGAN SEAN P

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.





**FEDERAL BUREAU OF INVESTIGATION**

Date of entry    11/05/2012

**FEDERAL GRAND JURY MATERIAL - DISSEMINATE PURSUANT TO RULE 6(E)**
Do not disseminate except as authorized by federal rule of criminal procedure 6(e).

    Cynthia ████████date of birth (DOB)████████was interviewed at her temporary residence ██████████████████████After being advised of the identity of the interviewing Agent and the nature of the interview,████████ was interviewed. The interview was audio-recorded.

    She had learned that writer was looking to speak with her, so she contacted him from her cell phone (530)████████During the interview, she was served with Eastern District of California Grand Jury Subpoena 2012A-37-05. Due to the late date of service and her lack of a vehicle, writer offered to provide her transportation to Sacramento the following day if approval was obtained. She agreed, indicating her desire to comply with the subpoena before leaving to visit a friend in Canada.

    She discussed her association with Officer Johnny Poland, starting her Freshman year in high school. She moved away her Sophomore and Junior years and then returned to the Mount Tallac Continuation School. She did not see Poland much, if at all, during this time. She denied any sexual contact with Poland while she was a juvenile. She suspected another girl her age was romantically involved with Poland in high school, but did not know for sure.

    ████████met Poland again in 2010 at Vex Nightclub where he was working security. They began communicating and Poland began visiting her at her apartment on Stockton in the Fall of 2010. They started a romantic relationship in late 2010, early 2011. Their relationship was discovered by Poland's wife in April, 2012. Poland then moved in with her at her apartment on Stockton Avenue. She lost her job at Push Fitness shortly after Poland's wife discovered the affair. She works at Push and is friends with the owner████████████She is in the process of moving out of the Stockton apartment because she cannot afford it. She is staying with a friend currently.

| | | |
|---|---|---|
| Investigation on | 08/22/2012 | at South Lake Tahoe, California, United States (In Person) |
| File # | 194C-SC-45276 | Date drafted 11/05/2012 |
| by | CAMPION CHRISTOPHER | |

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.











**OFFICIAL RECORD**

## FEDERAL BUREAU OF INVESTIGATION

Date of entry    11/05/2012

**FEDERAL GRAND JURY MATERIAL – DISSEMINATE PURSUANT TO RULE 6(E)**
Do not disseminate except as authorized by federal rule of criminal procedure 6(e).

    Cynthia ▮▮▮▮▮date of birth (DOB) ▮▮▮▮▮▮▮▮was picked up at approximately 7:30 am at her temporary residence, ▮▮▮▮▮▮▮▮▮▮ and provided transportation to her Grand Jury appearance at the Sacramento federal courthouse. This transportation was verbally approved by SSA Scott Campbell due to the witnesses inability to obtain her own transportation on short notice.

    At the United States Attorney's Office (USAO), ▮▮▮▮▮▮was interviewed in the presence of Assistant United States Attorney Michelle Rodriguez prior to her testimony. After discussing grand jury testimony in general, ▮▮▮▮▮▮provided the following information regarding Johnny Poland. The interview was audio-recorded.

    She was a frequent visitor to Poland's School Resource Officer (SRO) office at South Tahoe High School (STHS) during her Freshman year. He also gave her rides home on approximately 8 occasions when she missed the bus. She transferred to schools out of South Lake Tahoe during her Sophomore and Junior years and had no contact with him. When she returned for her Senior year, she attended the Mount Tallac continuation school, located in its own building on another part of campus. She did not recall seeing Poland at all after she returned to Tahoe. She was adamant that no sexual activity took place with Poland during any of her contacts with him in high school.

    When she saw Poland working security at Vex nightclub, she was living with ▮▮▮▮▮▮▮. Poland began visiting her when she moved to her own apartment on ▮▮▮▮▮▮▮▮▮, beginning in December, 2010/January, 2011. He would visit on duty and off duty, at various times of the day. He also visited an older woman he referred to as "Momma" who ran a sewing shop near the 7-11 at Carson and U.S. Highway 50, which is close to her apartment.

    Poland told her that ▮▮▮▮▮▮▮▮was "trying to set him up." She knew ▮▮▮▮▮▮but never spoke to her. She associated with her uncle ▮▮▮▮▮▮▮and other family members did not like ▮▮▮▮▮▮.

Investigation on   08/23/2012   at   South Lake Tahoe, California, United States (In Person)

File #   194C-SC-45276       Date drafted   11/05/2012

by   CAMPION CHRISTOPHER, BILDERBACK BRADLEY JOE

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.



194C-SC-45276

Continuation of FD-302 of Cynthia ███████████████████████ , On  08/23/2012 , Page  2 of 2

    Poland did 'run' her in the police computer early in their relationship, sometime after September, 2010. He had a telephone number of (530) ███████ for approximately 6 months which was a Google number.

    After her testimony, agents provided transportation back to South Lake Tahoe. ███████ obtained evidence compelled by her Grand Jury subpoena. (See separate documentation)



